**UNITED STATES of America, Plaintiff,**

**v.**

**Valeria VISTOLI–FERRONI (True Name: Amada Amolin Munoz), Defendant.**

**No. 89–861–CR.**

United States District Court, S.D. Florida.

Feb. 1, 1991.

Jacqueline Rubin, Asst. Federal Public Defender, for defendant.

David Mellinger, Asst. U.S. Atty., for U.S.

## MEMORANDUM OPINION AND ORDER ON RE–SENTENCING

RYSKAMP, District Judge.

THIS MATTER is before the court on the re-sentencing of the defendant. After a careful consideration of the record and having held two hearings on this matter, the court now issues the following opinion.

## I. ANALYSIS

On April 4, 1990, the defendant was found guilty on two (2) counts: importation of at least 50 grams of cocaine base in violation of 21 U.S.C. § 952, and possession with intent to distribute at least 50 grams of cocaine base in violation of 21 U.S.C. § 841.

The difficulty encountered by the court, and addressed at the sentencing hearing on December 21, 1990, and the re-sentencing hearing on January 24, 1991, is that the term "cocaine base" is susceptible of both broad and narrow interpretations. Technically, "cocaine base" is defined very broadly as any form of cocaine with the hydroxyl radical (OH–). *United States v. Brown*, 859 F.2d 974, 975–76 (D.C.Cir.1988). Among the forms of cocaine that fall within this broad definition is the substance commonly known as "crack." *Id.* at 976. The court's research indicates that the term "cocaine base" is widely used by commentators, legislators, and judges interchangeably with the term "crack." *See, e.g.,* 1990 United States Sentencing Commission Guidelines Manual at 2.50 ("1 gm of Cocaine Base ("Crack") = 100 gm of cocaine/20 gm of heroin"); *United States v. Reina*, 905 F.2d 638, 639 (2d Cir.1990) (stating that the defendant "was arrested for attempting to sell six ounces of cocaine base (commonly known as 'crack')"). Technically, though, the two terms are not interchangeable: crack is actually only one variety of cocaine base. *See* Transcript of Sentencing, December 21, 1990 ("Transcript") at 45 ("[A]ll crack is cocaine base, but not all cocaine base is crack") (testimony of DEA chemist); *see also United States v. Brown*, 859 F.2d at 976.

A number of courts, including the Eleventh Circuit, have held that 21 U.S.C. § 841(b), which was amended in 1986 to provide substantially enhanced penalties for "cocaine base," is not impermissibly vague, despite the failure to define "cocaine base" in extensive and definitive chemical notation or in slang names of targeted drugs. *See, e.g., United States v. Williams*, 876 F.2d 1521, 1525 (11th Cir. 1989). However, these cases generally deal with the possession, manufacture, or distribution of *crack*. By contrast, the substance at issue in the case at hand is not crack, but rather a different form of cocaine base, in liquid form, which cannot be used (sniffed, injected, or smoked) without further processing. Transcript at 27, 39–40. Furthermore, the testimony of chemists presented to this court at the sentencing hearing indicates that the liquid form of cocaine base could be as easily converted into cocaine hydrochloride (the powder form of cocaine which can be sniffed or injected), which carries substantially lower penalties, as into crack. *Id.* at 21–32, 38–55. It is also noteworthy that a given amount of the liquid form of cocaine base would yield only about 10% more cocaine hydrochloride than it would yield in the form of crack. *Id.* at 23.

When Congress (and the sentencing commission) prescribed enhanced penalties for "cocaine base," as opposed to cocaine hy-

drochloride, its intent was to punish those who manufactured, sold and possessed *crack* more severely. This is quite clear from the legislative history. *See United States v. Williams,* 876 F.2d at 1525 ("[T]hose concerned with the relevant legislation understood cocaine base to refer to crack and intended to enhance penalties for crack dealers.") (citations omitted); *see also United States v. Levy,* 904 F.2d 1026, 1032 (6th Cir.1990) ("It is undisputed that Congress amended [21 U.S.C. § 841(b)(1)(B) ] out of concern that cocaine base is 'more dangerous to society that cocaine [powder] because of crack's potency, its highly addictive nature, its affordability, and its increasing prevalence.'") (quoting *United States v. Buckner,* 894 F.2d 975, 978 (8th Cir.1990). There is no indication that Congress intended to create much stiffer penalties for the base form of cocaine at issue in this case, which cannot be injected, smoked, or sniffed directly, and which can be converted into cocaine hydrochloride as easily as into crack.

## II. CONCLUSIONS

Based upon the above analysis, and for the reasons announced in open court at the sentencing hearing on December 21, 1990 and at the re-sentencing hearing on January 24, 1991, the court has imposed a sentence under the guidelines for importation and possession of cocaine (which definition does include cocaine base) pursuant to 21 U.S.C. § 841(b)(1)(A)(ii), rather than under the guidelines for importation and possession of cocaine base pursuant to § 841(b)(1)(A)(iii), as reflected in the Judgment and Commitment filed January 29, 1991.

In the alternative, the court has determined to depart downward from the sentencing guidelines for importation and possession of cocaine base pursuant to 21 U.S.C. § 841(b)(1)(A)(iii) to the sentence level reflected in the Judgment and Commitment, under 18 U.S.C. § 3553(b) (providing for downward departure for mitigating circumstances "not adequately taken into consideration by the Sentencing Commission").

It is further ORDERED and ADJUDGED, for purposes of clarification, that the time for appeal of the Judgment and Commitment shall run from January 29, 1991, the filing date of the Judgment and Commitment.

DONE and ORDERED.